This case poses the question of whether, consistent with Rodriguez v. United States, an officer after a traffic stop may order the driver back into the vehicle of his patrol car to is illegal under Rodriguez, which prohibits any extension of a stop that measurably extends the duration of that stop, absent some additional finding of probable cause. There are two facts that the officer relied upon to extend the stop in this case. First of all, he smelled cologne, which he testified is commonly used by drug traffickers to mask the scent of narcotics. And then secondly, the officer testified that both passengers were nervous. Based on case law from this court, we don't believe either one of those facts individually or in conjunction is sufficient to rise to the level of reasonable suspicion to extend the stop under Rodriguez. Um, first of all, with respect to the cologne, I know the record says cologne, but the officer didn't really say what kind of cologne it was or what it smelled like. I think there was a male driver, there was a female passenger, the officer did approach the car on the passenger side, and then that is when they smelled the cologne. Um, that is not an entire, that is not uncommon, presumably a large number of, presumably innocent travelers would be wearing cologne, especially a female. So counsel, are you taking the position that the stop entered into a realm of questionableness when the driver was requested to sit in the officer's vehicle while he did the license registration check? Yes, Judge. What case says that? What case says that? Well, I think Rodriguez stands for the proposition that the stop has to be limited to the basis for the infraction. Well, at that point, the officer's investigating the stop. He's doing the normal checking the legitimacy of the driver and the vehicle. Um, how is that extended or how is that some heightened imposition to have the driver present with him while he does those things? Well, I think it's important to realize this is a routine. I think the officer testified he does this in the majority of cases, 50% or more. We, our position would be that the act of removing the driver from the vehicle takes time. Telling the driver to have a seat in the vehicle takes time. And if you look at the record, the specific reason for that occurring was so he could question the driver more extensively, so he could separate the driver from the passenger. The officer testified he wanted to see what his nervousness was. Did he get more calm? Did he get more nervous? He wanted an opportunity to I'll concede this is not an extremely significant extension of the stop in terms of time. We're probably only talking about minutes at best. However, under Rodriguez, it prohibits any measurable extension. Haven't we already recognized, and maybe you're going to say this is different, in a case called Brown, we actually say that the officer, even in a routine traffic stop, can check driver's license, registration, and insurance, and, quote, request that the driver sit inside his patrol car. So I don't know how you can get around Brown. I don't know that Brown is cited in the brief. I guess I would try to get around it to say that it was hopefully predated Rodriguez, which was in 2015. It did. It was a 2003 case. So you would say that Brown may have been abrogated by the Rodriguez case. I believe Rodriguez did abrogate a lot of those cases based on that language that says any measurable extension is illegal, absent some additional reasonable suspicion. And prior to Rodriguez, I think this court, as well as many other courts of appeals, did allow what was referred to as a de minimis extension of the stop. The idea being that, hey, if you have a basis for a traffic infraction, such as speeding, that's going to allow the officer to extend the stop briefly, maybe 5, 10, 15 minutes, to perform like a canine sniff. So our position would be that Rodriguez significantly changes the landscape regarding the discretion afforded to police officers and what they can do, even when they do have a legitimate basis for the initial stop. And for what it's worth, the Brown case is 345 F 3rd 574. Thank you. Thank you, Judge Strauss. So do you say that the officer is not permitted to run these checks, even if he leaves the suspect in the suspect's own car? I think the officer can run checks. And Rodriguez creates a litany of things that an officer can do. Then how is there an extension of time here if the only difference is where the driver is sitting? Well, what we're claiming and what we think the record suggests is that the act of removing him from the vehicle, placing him in the vehicle would increase the amount of time necessary for the officer to do the checks that that officer needs to do. Why would that be? If the officer has to walk back either way, so if the He's going to place him in the vehicle. Also, this this record itself talks about the officer wanting to engage in additional questions, wanting to observe his body language, wanting to see to gauge his nervousness. All of those things would be unrelated to the to the basis for the stop, the speeding, speeding infraction. So and also Rodriguez clarifies that it's not a question of, OK, well, what's a reasonable period of time for the stop? Is it 15 minutes? Is it 10 minutes? What does the officers do? So the fact that this officer maybe could have done some other things that were within the purview of Rodriguez, it is not a basis to extend the stop. What matters is what the officer actually did. What did he do here to extend it? I mean, he can observe nervousness without extending. Yeah. And I think the question is, does the smell of cologne or perfume and nervousness, does that provide any basis for the extension of the stop? No, I'm saying what actions did he take that extended the time? You're saying just the fact of bringing the driver back to the car extended it? Or yes, and having him sit in the car and then whatever amount of time he spent questioning that the driver and observing his body language, gauging him, that's that's what this record says, is that that's the whole reason he brings them back. Do you have it? Do you have any precise time frame that was involved here? No. Something to indicate it was extended beyond? Yeah, any measurable extension is all we have to show under Rodriguez is our position. Well, what's the measure of extension here? Some amount of time that he spent observing his body language and placing him in the vehicle. Yeah, but I mean, if the officer runs a license check and he's waiting for the feedback on the computer, it doesn't extend the time, right? If he's also looking to see whether the fellow's nervous while they're waiting. The record does not establish that particular aspect of it. When the observation occurred, when the questioning occurred, did it occur while he was waiting? And our position would be the burdens on the government to prove any warrantless stop is reasonable. So what was the first point in time when the officer smelled marijuana? It was, I believe, once he was in the the driver was placed in the vehicle. That is when he first did smell marijuana. And the officer did draw a distinction between burnt marijuana and raw or green marijuana. So at that point, would the officer have the basis for further investigation? We would concede that that would be sufficient for further investigation. Well, then how could that create an unreasonable extension for him to follow up a little bit and walk him back to the truck? And at that point, things go downhill. The record does not establish that that observation occurred prior to the extended duration or extended detention that we're alleging. I do see I'm close to 30 seconds. I would like to reserve whatever time I have left. Thank you, Mr. Moss. Mr. Wagner. May it please the court. David Wagner on behalf of the United States. I think I'd like to start by addressing this question of whether Rodriguez changed this court's case law, saying that as part of a traffic stop, an officer is entitled to ask the driver to sit in a patrol car. That's the Brown case, right? You've discussed that on page 10 and 11 of your brief. The Brown case and many other cases that we cited say that. And in proposed Rodriguez, I would point the court to United States versus Espinoza, which is 28 from this case in which this court said, and I quote, once the driver makes the traffic stop, the officer may lawfully check the driver's license and registration, ask the driver about his destination and purpose, and request that the driver sit inside the patrol car. That's post Rodriguez. And nothing about Rodriguez calls that longstanding holding of the court into question. I think one aspect of Rodriguez that it's also important not to overlook is that Rodriguez makes clear that there's two missions of the traffic stop. First mission is to address the traffic violation, which I think was the gist of the discussion that the court just had. But the second mission is to attend to related safety concerns. And asking a driver to sit in the patrol car with the officer where the officer can observe the driver and make sure that the driver isn't posing a threat, I think is an important part of an officer's safety during a traffic stop. And under Rodriguez, it's perfectly permissible as part of a traffic stop to take that safety. I'd also like to address the premise of Mr. Barker's argument in this case, which is that asking him to sit in the patrol car measurably extended the duration of the stop. If anything, in this case, it shortened the duration of the stop because the officer did not need to go back and forth to Mr. Barker's car to ask him questions relating to the traffic violation. If the court has questions about that, I would encourage the court to view the video of the traffic stop, which I believe has been submitted to the court, in which we can see that when Corporal Dudek and Mr. Barker get into the patrol car, Corporal Dudek asks him a number of questions related to the traffic violation, such as what state his license plate is from, why he wasn't wearing his seatbelt, where he had come from, where he was going. All these questions related to the traffic violation, which if they hadn't been sitting in the patrol car together, Corporal Dudek probably would have had to walk back and forth in order to get answers to those questions, which I think would have extended the duration of the traffic stop even longer. And of course, once Corporal Dudek and Mr. Barker were sitting in the patrol car, Corporal Dudek smelled both burnt and green marijuana coming from Mr. Barker's person, which gave him probable cause to search Mr. Barker's car. And then once he went back to the car to get insurance information from the passenger, he smelled green marijuana again, which further heightened his suspicion and gave him further basis for probable cause. Unless the court has any other questions, I'm prepared to rest on my feet. Thank you. Mr. Moss? Thank you, Judge. With regard to the question of safety, I think Rodriguez stands for the proposition of safety related to the vehicle, the drivability of the vehicle. I don't think there's anything in Rodriguez about that safety issue pertaining to officer safety. Now, I know officer safety is another issue, but Rodriguez does not speak to the safety of the vehicle as being a basis for extending the stop. I think the question of whether or not the officer's practice actually shortened the stop is speculative. Certainly, the purpose of him coming into the vehicle, as what's undisputed in the record, was to gauge his demeanor and to figure things out and learn a little bit more. So that's our basis for claiming that it was measurably extended, and that's our basis for arguing that it rendered the stop. Thank you, Judge. Thank you, Mr. Moss. The court thanks both counsel for the argument you provided to us this morning. Thank you. You may be excused. Madam Clerk.